**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Asarael Zuniga**, individually and on behalf of all others similarly situated, | Case No. 1:17-cv-5119 |
| Plaintiff; | Judge Elaine E. Bucklo |
| v. | Magistrate Judge Maria Valdez |
| **Asset Recovery Solutions, LLC.** and **Bureaus Investment Group Portfolio No. 15, LLC**, | |
| Defendants. | |

**Defendants' Memorandum in Support of their
Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6)**

Defendants Asset Recovery Solutions, LLC ("ARS") and Bureaus Investment Group Portfolio No. 15, LLC ("BIG 15"; together with ARS, "Defendants") submit this memorandum in support of their motion to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).[1]

### INTRODUCTION

This case is based on a single phrase related to a single disclosure requirement. The disclosure requirement comes from Section 1692g(a)(2) of the Fair Debt Collection Practices Act ("FDCPA"), which says that a debt collector must, in its collection letters, identify "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). ARS, a debt collector, sent Plaintiff Asarael Zuniga ("Zuniga") a letter asking for payment on a debt. The letter identified BIG 15 as the "current creditor." Zuniga now claims that the phrase "current creditor" does not adequately describe "the creditor to whom the debt is owed." Zuniga is mistaken.

The case should be dismissed with prejudice for three principal reasons:

A. Zuniga lacks standing to sue because the phrase "current creditor" did not cause him a concrete or particularized harm;

B. Zuniga cannot state a claim because the FDCPA endorses, and elsewhere mandates, use of the phrase "current creditor"; and

C. Zuniga cannot sue BIG 15 because it not plausibly alleged to be a "debt collector" as that term is defined by the FDCPA.

### FACTS

The facts are straightforward. Zuniga defaulted on a credit card debt owed to Capital One N.A. ("Capital One"). (Compl. ¶ 9.) At some point after the default, the debt was acquired by BIG 15 and assigned to ARS for collections. (*See id.* ¶ 10.) BIG 15 is alleged to be a debt buyer who uses "other collection agencies" to collect the debts it buys. (*Id.* ¶ 6.) ARS is alleged to be one of these other collection agencies. (*Id.* ¶¶ 4, 10.)

---

[1] In accord with the Court's Mandatory Initial Pilot Program, Defendants are filing answers and affirmative defenses alongside their motion to dismiss.

In April 2017, ARS sent Zuniga a collections letter. (*See* Compl. at Ex. C, attached here as Ex. 1.) The letter disclosed Capital One as Zuniga's "Original Creditor" and BIG 15 as Zuniga's "Current Creditor." (*Id.*) This is what the disclosure looked like:

| Original Creditor: | CAPITAL ONE N.A. |
| --- | --- |
| Current Creditor: | BUREAUS INVESTMENT GROUP PORTFOLIO NO 15 LLC |

In response, Zuniga filed the present class action lawsuit. He alleges that to satisfy Section 1692g(a)(2), ARS needed to identify BIG 15 not as the "current creditor," which he suggests could be unclear to some, but as the "creditor to whom the debt is owed." (Compl. ¶¶ 10-11, 14.) Zuniga does *not*, however, allege that the phrase "current creditor" was unclear to him. He also does not allege that he paid any part of the debt or that the debt is subject to dispute. He simply alleges that the phrase "current creditor" was not good enough.

On these facts, Defendants seek dismissal for lack of standing and failure to state a claim.

**LEGAL STANDARD**

This motion makes a facial challenge to subject matter jurisdiction under Rule 12(b)(1), and asserts, under Rule 12(b)(6), that Zuniga fails to state a claim. The applicable legal standards are similar. The main difference is that Defendants have the burden of persuasion on their 12(b)(6) arguments but Zuniga has the burden of establishing jurisdiction. *See United States ex rel. Cause of Action v. Chicago Transit Auth.*, 71 F. Supp. 3d 776, 780 (N.D. Ill. 2014).

That difference aside, the Court begins in both instances by identifying the "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). This filtering is proper because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. As to any "well-pleaded factual allegations, [the] court should assume their

veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While the plausibility standard does not require probability, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To the extent Zuniga has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). So too to the extent Zuniga has not plausibly pled standing to sue. *See Makowski v. United States*, 27 F. Supp. 3d 901, 915 (N.D. Ill. 2014). Finally, if it is clear that Zuniga cannot plead sufficient facts to state a claim, the Court has discretion to dismiss with prejudice. *See Gonzalez-Koeneke v. W.*, 791 F.3d 801, 808 (7th Cir. 2015).

ARGUMENT

**A.    Zuniga lacks standing because he did not suffer a concrete or particularized harm.**

**1.    Standing requires a concrete and particularized harm.**

To bring suit, Zuniga must have standing under Article III of the United States Constitution. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Standing is an essential component of the Court's subject matter jurisdiction. *Id.* To have standing, Zuniga "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The "injury in fact" element itself has a number of requirements: "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Defendants focus here on the concrete and particularized harm requirements. For a harm to be "concrete," it "must actually exist." *Spokeo*, 136 S. Ct. at 1548. It must be "'real,' and not 'abstract.'" *Id.* For a harm to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* As we shall see, Zuniga did not suffer any concrete or particularized harm.

### 2. The concrete harm must exist independent of a statutory cause of action such that it would exist even if statute granting the cause of action did not.

In *Spokeo v. Robins*, the Supreme Court clarified two principles about Article III standing that decide the case here. The first principle is that while Congress can turn a non-actionable concrete harm into an actionable harm by creating a right of action, creating a right of action does not turn a non-concrete harm into a concrete one. *See id.* at 1549; *Hernandez v. Midland Credit Mgmt., Inc.*, No. 15-cv-11179, 2017 WL 2985764, at *2 (N.D. Ill. July 13, 2017) ("Under *Spokeo*, Congress' finding alone cannot be decisive on the standing question . . . ."). Put another way, for a harm to be concrete, it must exist independent of a cause of action such that it would exist even if the statute creating the cause of action did not. The second principle is that although Congress cannot turn a non-concrete harm into a concrete one, its judgment as to what constitutes a concrete harm—as evidenced by its enactments—it important. *See Spokeo*, 136 S. Ct. at 1549. Thus, a harm that Congress has sought to guard against by creating a responsive cause of action is often, perhaps presumptively, a concrete harm.

Here, Zuniga claims that Section 1692g(a)(2) of the FDCPA required ARS to, more or less, use in its letter the exact phrase, "the creditor to whom the debt is owed." (*See* Compl. ¶ 11.) To have standing, then, Zuniga needed to have suffered a concrete harm caused by ARS's use not of that phrase but of the synonymous one, "current creditor." (For a detailed discussion of the respective phrases, *see infra* Section B(3).) As detailed above, Zuniga cannot claim that the phrasing issue itself gives him standing just because it purportedly violates the FDCPA. To

be sure, a number of FDCPA cases include language that suggests that an FDCPA violation itself creates standing. *See, e.g., Saenz v. Buckeye Check Cashing of Illinois*, No. 16-cv-6052, 2016 WL 5080747, at *2 (N.D. Ill. Sept. 20, 2016) ("nothing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III."). But such language is imprecise. Under the principles set forth in *Spokeo*, it is not correct to say that every FDCPA violation creates standing. The most that can be said is that the conduct that constitutes an FDCPA violation will often cause the concrete harm that Congress sought to guard against. *See Spokeo*, 136 S. Ct. at 1549 ("a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."). But that will not be true in every case.

This is one of those cases where it is not true. To put this case in context, consider first that it does not involve the more typical FDCPA allegations of deceptive or unfair debt collection practices. Courts have often found that being subjected to those practices is a concrete harm in itself and thus alleging a prohibited practice almost necessarily entails alleging a concrete harm. *See, e.g., Hernandez*, 2017 WL 2985764, at *3. To satisfy the concrete harm requirement in cases involving those allegations, therefore, nothing beyond the prohibited practice generally need be alleged.

In contrast, this case is based on Zuniga's alleged right to a certain disclosure under Section 1692g(a)(2). This case, in other words, is a right-to-information case. Yet not being provided with information that one allegedly has a right to is *not* necessarily inherently harmful. The conduct constituting the alleged violation will not always cause a concrete harm. Thus, Zuniga thus cannot rely on the fact of the alleged statutory violation to give him standing. The Supreme Court's seminal right-to-information, which Defendants turn to now, bear this out.

- 5 -

3.      **The Supreme Court's right-to-information cases make clear that it is not the violation of a right to information but the consequence of the violation that creates standing.**

Four seminal Supreme Court cases make clear that standing in a right-to-information case turns not on the violation of the right but on whether the violation causes a concrete harm.

The first case is *Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998), which was cited by *Spokeo*. The Court in *Akins* found that voters had standing to sue for being deprived of information that Congress had determined should be made public. Standing was not, however, predicated on the deprivation itself. It was predicated on the consequences of the deprivation—namely that it hindered voters' ability to "evaluate candidates for public office," which is "directly related to voting, the most basic of political rights . . . ." *See id.* at 24-25.

*Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989), which *Spokeo* also cited, is similar. There the Court held that being deprived of information about an executive branch advisory committee that was subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue." *Id.* at 449. Yet as in *Akin*, the Court did not rest its conclusion on the mere right to information. It rested it on the harm that resulted when that right was infringed, which was harm to the plaintiffs' ability "to monitor [the ABA's Standing Committee on the Federal Judiciary and its] workings and participate more effectively in the judicial selection process." *Id.* at 449.

The third case is *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 366 (1982), which *Spokeo* also cited but not as a right-to-information case. *Havens Realty* held that a black "testor" had standing under the Fair Housing Act to sue a realtor who lied to her about the availability of housing even though she had expected to be lied to and had no interest in doing business with the realtor. *See Havens Realty*, 455 U.S. at 374. Considered in isolation, that would appear to help Zuniga because standing was found even though the testor never relied on the information or

intended to use it for business purposes. Considered in context, however, *Havens Realty* is not a right-to-information case in the traditional sense. The provision of the Fair Housing Act at issue did not prohibit false disclosures *per se*. It prohibited false disclosures motivated by "race, color, religion, sex, handicap, familial status, or national origin." *See* 42 U.S.C. § 3604(d). Thus, the harm to the testor in *Havens Realty* was not receiving false information, but receiving false information because she was black. *See Havens Realty*, 455 U.S. at 375 (to sue one must be "victim of a discriminatory misrepresentation"). And that, our nation's history and laws make clear, is a concrete harm. *See, e.g.,* U.S. Const. art. XIV, § 2.

The final case is *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978), which we come to in a roundabout way. *Nixon* was relied on by the Seventh Circuit in its recent decision in *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016). In *Carlson*, a scholar petitioned for access to sealed grand jury materials that the scholar wished to write about. The question of standing arose because even though the materials were publicly significant, the scholar had not been party to the grand jury proceedings. The Seventh Circuit nevertheless held that the scholar had standing because he was being denied "access to government documents that he has a right to seek." *Id.* at 758. Like the holding in *Havens Realty*, this ruling would, standing alone, seem to suggest that violation of a right to information itself constitutes a concrete harm. But again, the analysis is more involved.

The "right to information" that the Seventh Circuit cited in *Carlson* came from *Nixon*. *See Carlson*, 837 F.3d at 759 (quoting *Nixon*). *Nixon* explained "that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597. But that did not mean that every deprivation of this "general right to inspect and copy" created standing to sue. Instead: "The interest necessary

- 7 -

to support the issuance of a writ compelling access [may be] found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies . . . . and in a newspaper publisher's intention to publish information concerning the operation of government . . . ." *Id.* at 598-97. Thus under *Nixon*, it is not the violation of a right to information, but the concrete harm caused by the violation, that gives rise to standing.

Applied here, Zuniga's bare reliance on an alleged violation of Section 1692g(a)(2) to give him standing does not suffice. He needed to suffer a concrete as a result of the alleged violation. As the next section details, he did not.

### 4. The term "current creditor" did not cause any concrete or particularized harm.

Defendants have identified four harms that courts have noted Section 1692g(a)(2) is designed to prevent. None of those harms occurred here.

The first harm is being subjected to deceptive or unfair debt collection practices. Section 1692g(a)(2) does not address such practices directly; that's the job of Sections 1692e and f. Instead, courts have suggested that the disclosures required by Section 1692g(a), including subpart (2), serve to reduce the incidence of these practices. *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 320 (7th Cir. 2016). That is of no moment here, however. Zuniga does not allege that he was subjected to any deceptive or unfair collection practices.

The second harm is the statutory right provided by the FDCPA to demand that the debt collector verify the debt. *See* 15 U.S.C. § 1692g(a)(5). Some cases have found that failure to comply with Section 1692g(a)(2) can impair this right. *See Lane v. Bayview Loan Servicing, LLC*, No. 15-cv-10446, 2016 WL 3671467, at *5 (N.D. Ill. July 11, 2016) ("The concrete harm, then, is the loss of the right to verification"). But that too is not at issue. Zuniga does not allege that he ever intended to exercise his verification rights.

The third harm was noted by the Seventh Circuit in *Janetos.* There the court said that "[k]nowing the **current creditor** potentially affects the debtor in the most basic ways, such as what the debtor should write after 'pay to the order of' on the payment check to ensure that the debt is satisfied." *Janetos*, 825 F.3d at 324 (internal quotations omitted) (emphasis added). That harm, or risk of confusion as it were, is also not present. As *Janetos* further indicated, confusion over whether to pay the debt collector or the debt owner—the only two possibilities here—does not matter because payment to either extinguishes the debt. *See id.* Defendants note that the Seventh Circuit itself used the phrase "current creditor" in its opinion in *Janetos*, just as ARS used in its letter.

The fourth and final potential harm is "the potential for fraud." *Id. Janetos* theorized that a fraudulent debt collector could omit the name of the current creditor to avoid tipping the consumer off to the fraud. No fraud or risk of fraud ever existed here, however, as Zuniga does not dispute that BIG 15 is the owner of the debt and that ARS is authorized to collect it. (*See* Compl. ¶ 10.) *See Janetos*, 825 F.3d at 325 (indicating that the fraud concern did not apply because "defendants are correct that Fulton was in fact authorized to collect debts on Asset Acceptance's behalf"). Taken together, Zuniga did not suffer any concrete harm. Even if Section 1692g(a)(2) was violated by the phrase "current creditor" (which it wasn't), Zuniga came through unscathed.

One last point. In addition to there being no concrete harm, neither was there a particularized harm. As detailed below in Section B, the thrust of Zuniga's argument about the phrase "current creditor" is its alleged effect *not on him*, but on the so-called "unsophisticated consumer." Yet the "unsophisticated consumer" is a legal construct. Harm to it is not harm to Zuniga and therefore does not satisfy standing's particularized harm requirement. *See Spokeo*,

136 S. Ct. at 1548 (the harm "must affect the plaintiff in a personal and individual way.").

In sum, because the words "current creditor" did not cause him a concrete or particularized harm, Zuniga lacks standing to sue. His claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

**B.      Zuniga fails to state a claim because identifying the "current creditor" is *exactly* what the FDCPA requires.**

Moving to the merits, Zuniga also fails to state a claim. This entire lawsuit is based on whether ARS's use of the phrase "current creditor" satisfies its obligation under Section 1692g(a)(2) to provide the "name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). This is silly; of course it does. Not only does Section 1692g(a)(2) not require any particular phrasing, but Section 1692g(a)(5) endorses—nay, mandates—the phrase "current creditor."  "Current creditor" is thus a perfectly permissible way of describing the current owner of a debt.[2]

Zuniga nonetheless presses on. He alleges two reasons for why the phrase "current creditor" is somehow insufficient. In Zuniga's words:

   a.   Defendants' letter failed to explain what, if any, the difference was between the 'current' and 'original' creditor; and

   b.   Defendants' letter failed to explain . . . which "creditor" it was representing, or whether it representing both.

(Compl. ¶ 10.)

Defendants address these assertions by making the following four sequential points:

**1.      An FDCPA claim based on a statement may be dismissed with prejudice when it is clear from its face that it does not violate the FDCPA.**

To set the table for why dismissal with prejudice is proper, Defendants note that this

---

[2] The only potentially vexing question in this case is not whether it has merit—it does not—but whether it was brought "in bad faith and for the purpose of harassment" such that Defendants are entitled to their attorney's fees. *See* 15 U.S.C. § 1692k(a)(3). But that is a question for another day.

Court divides FDCPA claims about improper statements or omissions into three buckets. *See Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009). The third bucket consists of statements or omissions that are plainly improper and for which no evidence of impropriety is therefore needed. *See id.* at 801. An example would be the omission of a required disclosure. *See Janetos*, 825 F.3d at 323. The second bucket consists of statements or omissions that are potentially, though not clearly, problematic. *See Ruth*, 577 F.3d at 800. For those, the plaintiff must prove impropriety. *See id.* Finally, the first bucket consists of statements and omissions that are plainly *not* improper. *Id.* Claims based on these should be dismissed with prejudice under Rule 12(b)(6). *See id.* No discovery, evidence, or fact-finding is needed. *See id.*

For the reasons discussed below, Zuniga's claims fall into the first bucket. No evidence, discovery, or fact-finding is needed to see that the phrase "current creditor" satisfies Section 1692g(a)(2). Dismissal with prejudice is compelled. *See Bayview Loan Servicing*, 2016 WL 3671467, at *7 ("a § 1692g claim cannot survive the dismissal-motion stage where it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." (internal quotations omitted)).

**2.    The unsophisticated consumer standard, under which allegedly improper statements are judged, assumes reasonable intelligence and basic deductive reasoning skills.**

Whether a statement in a debt collection letter is improper (or ineffective, as Zuniga claims) is assessed under the hypothetical "unsophisticated consumer" standard. The question so becomes, what sort of behavior does the unsophisticated consumer exhibit? As the Seventh Circuit has put it, the "unsophisticated consumer may be uninformed, naïve, or trusting"—and he surely is "not as learned in commercial matters as are federal judges." *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 273–74 (7th Cir. 2014) (internal quotations omitted). But he is also "not completely ignorant." *Id*. Quite the contrary, he "possess[es] rudimentary knowledge about

the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence' and is capable of making basic logical deductions and inferences." *Id.* (citations and alterations omitted). When that standard is applied here, Zuniga's claims cannot escape dismissal.

### 3. The unsophisticated consumer understands the difference between the words "original" and "current."

Zuniga first complains that ARS's letter "failed to explain what, if any, the difference was between the 'current' and 'original' creditor." (Compl. ¶ 10.) This grievance does not make sense. The difference is explained by the differing descriptors: original and current. The difference is obvious. Perhaps, then, Zuniga means that an unsophisticated consumer might not understand that "current creditor" means the "creditor to whom the debt is owed." (*See generally* Compl. ¶ 11.) That takes a pretty low view of the unsophisticated consumer. How could one successfully apply for and use a credit card and yet be unable to understand the word "current" or distinguish it from the word "original?" Zuniga does not say.

That said, Zuniga's claims are facially frivolous because the FDCPA not only endorses using the phrases "original creditor" and "current creditor"—it mandates them. In Section 1692g(a)(5), the FDCPA instructs debt collectors to include in their letters a statement that "upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the *original creditor*, if different from the *current creditor*." 15 U.S.C. § 1692g(a)(5) (emphasis added). In contrast, nowhere in the FDCPA are debt collectors told to define the phrase "current creditor." Thus, by the FDCPA's own lights, the phrase "current creditor," without more, effectively describes the ***present*** owner of a debt.[3]

---

[3] Merriam-Webster defines the word "current" as (1) "presently elapsing"; (2) "occurring or existing in the present time"; or (3) "most recent." (https://www.merriam-webster.com/dictionary/current.) Each of those definitions means "right now." "Original," in turn, is defined as "the source or cause from which something arises." (https://www.merriam-webster.com/dictionary/original.)

The case law agrees. Although Defendants did not find a case where a plaintiff had argued that the phrase "current creditor" was insufficient to identify the "current creditor," the Seventh Circuit's decision in *Janetos* is dispositive. *Janetos* was about whether a collections letter that named the entity that owned the debt but didn't identify the entity as the owner violated Section 1692g(a)(2). The court held that it did. *See Janetos*, 825 F.3d at 323. But in so holding, the court did not suggest, as Zuniga demands here, that the collector needed to use the phrase "creditor to whom the debt is owed." The court said only that "Section 1692g(a) requires debt collectors to disclose specific information, ***including the name of the current creditor***, in certain written notices they send to consumers." *Id.* at 319 (emphasis added). That is exactly what ARS did—it correctly identified BIG 15 as the "current creditor."

### 4. The FDCPA does not require a debt collector to state that it is "representing the current creditor."

Finally, Zuniga adds nothing by claiming that "Defendants' letter failed to explain . . . which 'creditor' it was representing, or whether it representing both." The reasons are three-fold.

*First*, nowhere does the FDCPA say that a debt collector must say who it is "representing." Instead a debt collector must identify the current creditor, say that it is a "debt collector," and, in the case of initial written communications, state that it "is attempting to collect a debt and that any information obtained will be used for that purpose . . . ." 15 U.S.C. §§ 1692g(a)(2), e(11). ARS did each of those things.

*Second*, Zuniga is trying to foment confusion where none exists. He seems to be arguing that by not saying, "I represent BIG 15," ARS created confusion over who the current creditor was. But the absence of a statement confirming what has already been said does not negate what has already been said. The letter said that BIG 15 is the current creditor. Ergo, BIG 15 is the current creditor. Nothing here is confusing.

*Third*, even if it were somehow relevant to Zuniga whether ARS was "representing" the current creditor or the original creditor, Zuniga could easily deduce the answer. Since by definition, the current creditor ***presently*** owns the debt (according to Merriam-Webster), and since the original creditor, by definition, ***does not*** presently own the debt, collection of the debt would accrue to the former, not the latter. This is deductive reasoning at its most basic. It is thus well within the capabilities of an unsophisticated consumer.

To sum it up, the phrase "current creditor" satisfies Section 1692g(a)(2) and thus requires that the case be dismissed with prejudice for failure to state a claim.

**C.     Zuniga fails to state a claim against BIG 15 because he does not plausibly allege that it is a "debt collector."**

The claims against BIG 15 must be also be dismissed because it is not plausibly alleged to be a "debt collector," which is an essential element of an FDCPA claim. *See Bednarski v. Potestivo & Assocs., P.C.*, No. 16-CV-02519-JHL, 2017 WL 896777, at *3 (N.D. Ill. Mar. 7, 2017). Two of the FDCPA's definitions of debt collector are relevant here, *see* 15 U.S.C. § 1692a(6):

    a. "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts"; and

    b. any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." , ,

Zuniga tries to plead both definitions. Neither works.

The second definition does not work because BIG 15 is not alleged to be collecting a debt "due another" but a debt "due itself." As the Supreme Court recently held, that prevents the second definition from applying. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721, (2017).

Neither does the first definition work. That definition requires that "the principal

purpose" of BIG 15's business be debt collection. Zuniga alleges that it is, to be fair. (*See* Compl. ¶ 6.) But he does so in conclusory fashion with no supporting facts. This does not satisfy his pleading burden. *See Bednarski*, 2017 WL 896777, at *3 ("Bednarski's Amended Complaint explicitly states that Halberg 'is a 'debt collector' . . . but this conclusional statement is not supported by the rest of the factual allegations in the Amended Complaint.").

What is more, the few facts that Zuniga does allege contradict his conclusion. For instance, Zuniga says that "BIG15 is a bad debt buyer that buys large portfolios of defaulted consumer debts for pennies on the dollar, which it then collects upon through other collection agencies." (Compl. ¶ 6.) This allegation suggests that either BIG 15's principal purpose is debt buying—not debt collecting—or that it has *two* principal purposes—buying and collecting. Either way, BIG 15 would not meet the definition's requirement of having a *sole* principal purpose of debt collecting. *See Hunte v. Safeguard Properties Mgmt., LLC*, No. 16 C 11198, 2017 WL 2445137, at *3 (N.D. Ill. June 6, 2017) ("Congress's use of the definite article to modify 'principal purpose' means that Congress intended to cover only entities having *one* principal purpose"). On top of that, it strains all reason to say that BIG 15's principal purpose is debt collection when that is precisely the thing that Zuniga says BIG 15 pays others to do.

In short, the claims against BIG 15 fail for the additional reason that BIG 15 is not plausibly alleged to be a debt collector under the FDCPA.

### CONCLUSION

For the reasons set forth above, this case should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction and with prejudice under Rule 12(b)(6) for failure to state a claim.

Dated:  August 23, 2017                    Respectfully submitted,

                                          */s/ Dara C. Tarkowski*

                                          Dara C. Tarkowski
                                          Julian Dayal
                                          AKERMAN LLP
                                          71 South Wacker Drive
                                          Suite 4600
                                          Chicago, IL 60606
                                          (312) 634-5700
                                          (312) 424-1900 (fax)
                                          dara.tarkowski@akerman.com
                                          julian.dayal@akerman.com

                                          *Counsel for Asset Recovery Solutions, LLC and Bureaus Investment Group Portfolio No. 15, LLC*

## Certificate of Service

I hereby certify that on August 23, 2017, I filed the foregoing document through the Court's electronic filing system and thereby served all counsel of record.

*/s/ Julian Dayal*